[Cite as *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

| | | |
|---|---|---|
| THE STATE OF OHIO, | : | |
| Appellee, | : | C.A. CASE NO. 2010 CA 60 |
| v. | : | T.C. NO.   10CR98 |
| NICHOLS, | : | (Criminal appeal from Common Pleas Court) |
| Appellant. | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____16th____ day of ____September____, 2011.

. . . . . . . . . .

Andrew R. Picek, Assistant Clark County Prosecuting Attorney, for appellee.

J. Allen Wilmes, for appellant.

. . . . . . . . . .

FROELICH, Judge.

**{¶ 1}** Martin Nichols was found guilty on his guilty pleas to four counts of gross sexual imposition. He was sentenced to a five-year term of imprisonment on each count, to be served consecutively, for an aggregate term of 20 years, with five years of mandatory postrelease control. He was classified as a Tier II sexual offender. Trial counsel filed a timely notice of appeal and requested that Nichols be appointed new counsel for the appeal; this motion was overruled by the trial judge. Counsel was then appointed by this court. Nichols appeals from his conviction, challenging only his sentence.

{¶ 2}   Nichols worked as a janitor at the Enon Elementary School for approximately four years, and one of his responsibilities was to clean the cafeteria after lunch.   Pursuant to his plea, Nichols admitted to sexual contact with four girls, who were first- and second-grade students at the school; specifically, according to the facts stated by the prosecutor at the plea hearing, he touched the girls "on their butts and pubic area of their skirts and under their skirts and over their clothing"[1]  while they worked with him to clean the cafeteria.

{¶ 3}   Nichols was indicted on four counts of gross sexual imposition, which occurred over a period of five months, and pleaded guilty to each offense.   In exchange, the state agreed that a presentence investigation ("PSI") would be prepared and considered before sentencing.

{¶ 4}   The PSI that was submitted to the court included a probation department report, which indicated that Nichols was 40 years old, was married with two young children, and had no prior adult or juvenile criminal record.   It also included numerous letters from Nichols's family members, church associates, friends, and his attorney asking that his good character, contributions to the community, and genuine remorse be considered in imposing sentence.   The PSI did not include any recommendation from the court's probation officer.

{¶ 5}   The court was also presented with a "Victim Impact Statement" regarding one of the victims, R.T.,[2] and a letter purportedly from another victim, B.P.   The two other victims chose not to complete victim-impact statements, but one of the mothers spoke at sentencing.

{¶ 6}   According to the victim-impact statement, R.T.'s mother reported changes in her

---

[1] Although the nature of the contact is not clear from the recitation of facts at the plea hearing, the probable-cause affidavit attached to the presentence investigation indicates that "[n]o '[s]kin-to-skin' touching" occurred.

[2] It is unclear who prepared the victim-impact statement.   Its format is similar to the PSI prepared by the probation department, but it was not attached to that document, and it was not signed by the probation officer.

daughter's behavior, including "crying a lot, nervousness, not sleeping, biting her fingernails and being withdrawn." It also indicated that R.T. had become more "introverted." Under headings entitled "Physical Injuries Suffered by Victim" and "Seriousness and Permance [sic] of Injuries," the statement indicated "N/A."

{¶ 7} The letter from B.P.[3] stated, "I feel really upset that you did this to all these girls, including me. I'm very mad and upset that you did this to younger girls. You made my mom be very worried about me. I've been doing bad at school because of you. I hope this time in prison really makes you think of what you did and understand everything you've done to hurt people. I'm not going to let this overpower my life."

{¶ 8} A third victim's mother spoke at the sentencing hearing. She stated that her daughter, A.B., had "nightmares, bedwetting, anger issues and anxiety" and was in therapy "to help her get through this." She also stated that her daughter was insecure, had low self-esteem, and was fighting with her siblings in ways that the mother attributed to the abuse.

{¶ 9} The prosecutor's comments at sentencing included an acknowledgement that Nichols's statement of remorse was "one of the most sincere statements [he had] heard" in his many years of prosecuting sexual crimes against children, noting that Nichols did not ask for the minimum sentence or for leniency and commenting on Nichols's "true genuine remorse." However, the prosecutor cited the young age of the victims, the existence of multiple victims, and Nichols's "brazen" act of abusing the children in a public place as factors contributing to the seriousness of the offense. The prosecutor encouraged the court to impose a "substantial sentence" and consecutive sentences because of the high risk of recidivism with "pedophilia" and

---

[3]The signature on this document looks like a child's handwriting, but the text appears to have been written by someone else.

because a concurrent sentence "really only punishes him for one crime, one act."

{¶ 10} As discussed above, the trial court sentenced Nichols to the maximum term of imprisonment on each count and ordered that his sentences be served consecutively.

{¶ 11} Nichols raises two assignments of error on appeal.

{¶ 12} "The trial court's sentence is contrary to law in that it totally failed to apply the factors for recidivism mandated by O.R.C. 2929.12(D).

{¶ 13} "The trial court abused its discretion by imposing maximum consecutive sentences herein."

{¶ 14} Nichols argues that the trial court failed to properly apply the law and abused its discretion in imposing maximum, consecutive sentences under the circumstances presented in this case.

{¶ 15} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense." R.C. 2929.11(A). A court that imposes a sentence for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A). "Although [*State v.*] *Foster* [109 Ohio St.3d 1, 2006-Ohio-856] eliminated judicial fact-finding, courts have not been relieved of the obligation to consider the overriding purposes of felony sentencing, the seriousness and recidivism factors, or the other relevant considerations set forth in R.C. 2929.11, 2929.12, and 2929.13." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 25.

{¶ 16} We review a felony sentence using a two-step procedure. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 4. "The first step is to 'examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.'" *State v. Stevens,* 179 Ohio App.3d 97, 2008-Ohio-5775, ¶ 4, quoting *Kalish* at ¶ 4. If this step is satisfied, the second step requires that the trial court's decision be reviewed under an abuse-of-discretion standard. Id. Generally, abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence. *State v. Money*, Clark App. No. 2009CA119, 2010-Ohio-6225, ¶ 13. A brief, but thorough, attempt to define the term is set out by Judge Fain in *State v. Beechler*, Clark App. No. 09CA54, 2010-Ohio-1900, ¶ 60-70. In felony sentencing, the sentencing court abuses its discretion if it unreasonably or arbitrarily weighs the factors in R.C. 2929.11 and 2929.12. *State v. Jordan,* Columbiana App. No. 09 CO 31, 2010-Ohio-3456, ¶ 12.

{¶ 17} R.C. 2929.12(B) and (C) enumerate factors to be considered in weighing the seriousness of an offender's conduct, and R.C. 2929.12(D) and (E) enumerate factors to be considered in weighing the likelihood of the offender's recidivism. The court also may consider any other factors that are relevant to achieving the purposes and principles of sentencing. *State v. Saunders,* Greene App. No. 2009 CA 82, 2011-Ohio-391, ¶ 11.

{¶ 18} The trial court stated that it considered the statutory factors in imposing its sentence, and it imposed a sentence within the statutory range. Accordingly, Nichols's sentence was not "clearly and convincingly contrary to law."

{¶ 19} Having concluded that Nichols's sentence was not contrary to law, we must consider whether the trial court abused its discretion in imposing the sentence that it did. R.C. 2929.12(A) mandates that in exercising its discretion, "the court shall consider the factors set

forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing." The court did not elaborate on which factors it considered, nor was it required to do so. *Foster*, 109 Ohio St.3d 1, paragraph seven of the syllabus. The court had discretion to consider additional relevant factors as well. To the extent it may consider other, nonstatutory factors (e.g., facts adduced at trial, prior arrests, crimes of which the defendant was acquitted, otherwise inadmissible evidence that was suppressed), the court did not indicate that it did so, and the record does not contain any such factors. In addressing Nichols's argument that the court abused its discretion in imposing the sentence, we must consider the seriousness and recidivism factors more closely.

Seriousness

**{¶ 20}** Factors "indicating that the offender's conduct is more serious than conduct normally constituting the offense" (R.C. 2929.12(B)) include (1) the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim, (2) the victim suffered serious physical, psychological, or economic harm as a result of the offense, (3) the offender held a public office or position of trust in the community, and the offense related to that office or position, (4) the offender was obliged by the nature of his profession or occupation to prevent the offense or bring others committing it to justice, (5) the offender's professional reputation or occupation was used to facilitate the offense or is likely to influence the future conduct of others, (6) the offender's relationship with the victim facilitated the offense, (7) the offender committed the offense for hire or as a part of an organized criminal activity, and (8) in committing the offense, the offender was motivated by prejudice based on race, ethnic

background, gender, sexual orientation, or religion. R.C. 2929.12(B).[4]

{¶ 21} No evidence was presented or contained in the PSI that the physical or mental injury to any of the victims was exacerbated by her physical or mental condition, that the offenses were committed for hire, or that race, ethnic background, gender, sexual orientation, or religion played a role in the offenses. R.C. 2929.12(B)(1), (7), and (8).

{¶ 22} Although Nichols worked for a school district, he did not hold a public office or position of trust. The Ohio Supreme Court has held that the term "position of trust," as used in R.C. 2929.12(B)(3), applies to a private individual (as opposed to a public official) only if the person occupied a fiduciary relationship or other "special relationship of trust" with the victim. *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 41. "An unrestrained application of the phrase 'position of trust' to 'every breach of ethical, moral, or filial duty by a private individual' is not consistent with the sentencing principles set forth by the General Assembly ***." Id. at ¶ 21.

{¶ 23} Applying the standard set forth in *Massien*, the trial court could not have reasonably concluded that Nichols had " 'held a public office or position of trust in the community,' and the offense related to that office or position."[5]

{¶ 24} The PSI contained limited information about the physical and psychological harm to the victims. (R.C. 2929.12(B)(2).) The victim-impact statement indicated that R.T. suffered

---

[4]R.C. 2929.12(B)(9) relates to domestic violence and certain offenses "involving a person who was a family or household member"; it is not applicable in this case.

[5]*Massien* was decided one day before Nichols was sentenced. However, prior to *Massien*, this court had limited the applicability of the "public office or position of trust" criteria to public officials and public servants and did not apply it to private individuals. See *State v. Jones* (Nov. 13, 1998), Greene App. No. 98CA009; *State v. Hall*, Montgomery App. No. 22901, 2009-Ohio-6016. Thus, even if the trial court had been unaware of the Supreme Court's decision in *Massien* when it sentenced Nichols, it could not have considered Nichols as holding a public office or position of trust.

from "crying a lot, nervousness, not sleeping, biting her fingernails and being withdrawn," which her mother attributed to Nichols's conduct; but with respect to the seriousness and permanence of R.T.'s injuries, the report contained the notation "N/A." A.B.'s mother reported similar behavior issues. B.P.'s letter stated that she was "very mad and upset" at Nichols. The PSI contained no information about the other two victims and no indication that any of the children were being treated by healthcare professionals for physical or psychological problems, although A.B.'s mother stated at the sentencing hearing that her daughter was "in therapy." We do not question that the victims sustained psychological harm, but any such harm is inherent in the offense for which the legislature established a penalty range and does not appear to be "more serious than [would result from] conduct normally constituting the offense." The trial court could not have reasonably concluded that any of the victims "suffered serious physical, psychological, or economic harm" (R.C. 2929.12(B)(2)) based on the information before it.

{¶ 25} Nichols's occupation (R.C. 2929.12(B)(5)), which could also be construed as his "relationship with the victim[s]" (R.C. 2929.12(B)(6)), was used to facilitate the offense, in that his role as a janitor at the school gave him access to the victims. However, the nature of his occupation did not oblige Nichols "to prevent the offense or bring others committing it to justice." R.C. 2929.12(B)(4).

{¶ 26} In sum, the only factor indicating that Nichols's offense was more serious than conduct normally constituting the offense of gross sexual imposition was that his occupation facilitated the offense. In so holding, we do not suggest that Nichols's offenses were not serious criminal offenses; we simply conclude that they were not "more serious than conduct normally constituting the offense," as contemplated by R.C. 2929.12(B).

{¶ 27} Factors indicating that an offender's conduct is less serious than conduct normally

constituting the offense include (1) the victim induced or facilitated the offense, (2) in committing the offense, the offender acted under strong provocation, (3) in committing the offense, the offender did not cause or expect to cause physical harm to any person or property, (4) there are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.   R.C. 2929.12(C).

{¶ 28} "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration."   R.C. 2901.01(A)(3).   In adopting this definition, the Legislative Service Commission commented that "while physical illness is included in the concept of physical harm to persons, mental illness is not.   Serious mental conditions are reserved for the definition of serious physical harm to persons, but the milder mental disturbances cannot be pinpointed with sufficient precision for use in the criminal law."   A psychological effect on the victim does not fall within the statutory definition of "physical harm."  *State v. Dawson* (1984), 16 Ohio App.3d 443; *State v. Collier*, Montgomery App. No. 20131, 2005-Ohio-119, ¶ 61.   Therefore, the "less serious" factor that "the offender did not cause or expect to cause physical harm to any person or property" is present.

{¶ 29} None of the other factors enumerated as R.C. 2929.12(C), which indicate that the offender's conduct is less serious than conduct normally constituting the offense, are present in this case.

Recidivism

{¶ 30} A court "shall consider" all of the following factors that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is "likely to commit" future crimes: (1) at the time of committing the offense, the offender was under release from confinement before trial or sentencing, was under postrelease control for an earlier offense,

or had been unfavorably terminated from postrelease control for a prior offense, (2) the offender previously was adjudicated a delinquent child or has a history of criminal convictions, (3) the offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child or has not responded favorably to sanctions previously imposed for criminal convictions, (4) the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that he has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse, and (5) the offender shows no genuine remorse for the offense. R.C. 2929.12(D).

{¶ 31} With respect to Nichols's likelihood of committing future crimes, several of the statutory factors are inapplicable because Nichols had no criminal record or prior involvement with the justice system (R.C. 2929.12(D)(1 through 3)). He also had no pattern of drug or alcohol abuse (R.C. 2929.12(D)(4)). The prosecutor commented on Nichols's "true genuine remorse," and the judge acknowledged that "if I was here to grade you on whether or not you're respectful in Court, you'd get an A-plus. Whether or not you're remorseful, you'd probably get an A-plus. Whether or not you have support from friends and family you get an A-plus." (R.C. 2929.12(D)(5)). Thus, none of the statutory factors are present indicating a likelihood of committing future crimes.

{¶ 32} Finally, we review the factors "indicating that the offender is not likely to commit future crimes": (1) prior to committing the offense, the offender had not been adjudicated a delinquent child, (2) prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense, (3) prior to committing the offense, the offender had led a law-abiding life for a significant number of years, (4) the offense was committed under circumstances not likely to recur, and (5) the offender shows genuine remorse for the offense.

R.C. 2929.12(E).

{¶ 33} Again, Nichols's lack of a criminal record, the undisputed fact that he "had led a law-abiding life for a significant number of years," and his remorsefulness make it less likely that he will commit future offenses. Moreover, because Nichols's conviction in this case makes it very unlikely that he will ever be employed in a school again, the circumstances under which these offenses took place are "not likely to recur." Therefore, all of the "not likely to commit future crimes" factors are present.

{¶ 34} A trial court has discretion to impose any sentence within the authorized statutory range, but in exercising its discretion, it is nonetheless required to consider the statutory policies and factors that apply to every felony offense. *Hairston*, 118 Ohio St.3d 289. Insofar as only one of the statutory factors applied to suggest that Nichols's offense was more serious than conduct normally constituting the offense, and there were no statutory or nonstatutory factors tending to show that Nichols is likely to commit future crimes and all of the statutory factors were present to show that he is not likely to commit future crimes, it is difficult to imagine the trial court's basis for imposing maximum consecutive sentences in this case.

{¶ 35} After imposing sentence, the court remarked to Nichols, "In one of the letters there was a comment about what good would it do for you to sit in prison for twenty years. The answer to that is: You won't be able to hurt anybody for the next twenty years." While this may be literally accurate, it could be said about, and then used to subjectively justify, the maximum sentence in every case irrespective of the offense or the offender. It is vital to avoid both the reality and "perception that no clear standards are being applied, and that the rule of law is imperiled by sentences imposed for no discernible reason other than the subjective reactions of the sentencing judge." *Harmelin v. Michigan* (1991), 501 U.S. 957, 1007, 111 S.Ct. 2680, 115

L.Ed.2d 836 (Kennedy, J., concurring). Consideration of the statutory factors does not support such a sentence in this case.

{¶ 36} Further, at the sentencing hearing, the judge stated to Nichols: "I'm not here to be concerned about what happens to you. Whether or not you're rehabilitated *** – It's not my job to worry about what happens to you. It's my job to punish you, and it's my job to protect the community." Although the court correctly identified that the overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender, it seems to have ignored the fact that to achieve those purposes, the court was required to consider, among other things, rehabilitating the offender. R.C. 2929.11(A). "[T]he sentencing judge [should] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States* (2011), _____ U.S. _____, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196, citing *Koon v. United States* (1996), 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392. "For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe* (1937), 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43.

{¶ 37} Certainly, there are acts that could be called "the worst form of the offense" or offenders who by their actions or psychopathic make-up are not subject to habilitation, let alone rehabilitation. However, with the facts before it, by sentencing a 40-year-old first-time offender with no prior criminal record to 20 years in prison, the trial court failed to reasonably consider the concept of rehabilitation. See *State v. Parker*, Clark App. No. 10CA0074, 2011-Ohio-1418,

¶ 64, citing *State v. Culp* (May 25, 2001), Champaign App. No. 2000CA17.

{¶ 38} At the sentencing hearing, the court stated that the "damage here is way too great to temper it with people that want to tell me what a good guy you are." However, there is little, if any, evidence in the record to suggest that the victims suffered "great" damage. As we discussed above, there was no evidence of physical injury, and while the anger, fear, and disturbances experienced by the children are heartbreaking, there is nothing in the record to suggest that these injuries are qualitatively greater than those predictably experienced by any victim of a gross sexual imposition or that the children are unlikely to overcome these effects in a reasonable period of time with the love and support of their families and the knowledge that Nichols has admitted his wrongdoing and been punished for it.

{¶ 39} We in no way detract from the criminality of Nichols's actions and the wrong done to the children; however, treating this case as if it were the most serious form of the offense and Nichols as being the most depraved offender is not supported by the record and, further, depreciates the lawfulness and validity of such a finding in those cases that truly do merit such conclusions. As Justice Lanzinger has written, "[i]t is a rare victim who does not consider the crime committed by an offender to be undeserving of a maximum penalty. *** It will take a courageous judge not to 'max and stack' every sentence in multiple-count cases." *Hairston*, 118 Ohio St.3d 289, at ¶ 31 (Lanzinger, J., concurring).

{¶ 40} The court recited that it had considered "the record, oral statements of counsel, the defendant's statement, the pre-sentence investigation report, the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and *** the seriousness and recidivism factors under Ohio Revised Code Section 2929.12." And we have held that even absent such a statement, we presume that the court properly considered the factors. *State v. McClure*,

Montgomery App. No. 24129, 2011-Ohio-1415, ¶ 15. "While it is prudent to a trial court to mimic the language of a sentencing statute *** the exact language [of the] sentencing statute is not 'talismanic,' and, therefore, the trial court need not recite the exact language *** as if it amounted to the 'magic words' necessary to impose a prison term on an offender." *State v. Marple*, Clermont App. No. CA2004-09-073, 2005-Ohio-6272, ¶ 30. But the converse is true as well – merely mimicking the "magic words" does not by itself make a sentence lawful or not subject to an abuse-of-discretion analysis. The list of factors a court "shall consider" is not a parade of meaningless words, and the Supreme Court's *Foster* jurisprudence does not contemplate unbridled discretion or converting a sentencing hearing into a peremptory proceeding. The maximum consecutive sentence imposed on Nichols was an abuse of discretion.

**{¶ 41}** Nichols's assignments of error are sustained.

**{¶ 42}** The judgment of the trial court is reversed, and the matter is remanded for resentencing.

Judgment accordingly.

. . . . . . . . . .

FAIN and HALL, JJ., concur.