[Cite as *State v. Hicks*, 2016-Ohio-1420.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-20 |
| | : | |
| v. | : | T.C. NO. 14CR552 |
| | : | |
| CHARLENE HICKS | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . 

**O P I N I O N**

Rendered on the ___1st___ day of _____April_____, 2016.

. . . . . . . . . . 

ANU SHARMA, Atty. Reg. No. 0081773, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

DANIEL E. BRINKMAN, Atty. Reg. No. 0025365, Suite 2000 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . 

DONOVAN, P.J.

{¶ 1} Defendant-appellant Charlene Hicks appeals her conviction and sentence for four counts of theft from a disabled adult, in violation of R.C. 2913.02(A)(1), all felonies of the fourth degree, and one count of theft from a disabled adult, in violation of R.C. 2913.02(A)(1), a felony of the third degree.   Hicks filed a timely notice of appeal with this

Court on April 3, 2015.

{¶ 2}   At the time that the instant offenses were committed, Hicks had been employed at Hope Homes in various capacities for approximately twenty years.   Hope Homes is an organization which provides housing assistance and other services to disabled adults.

{¶ 3} In December of 2013, Hicks was employed as a supervisor for Hope Homes in Fairborn, Ohio.   Hicks' duties included scheduling support staff to handle client finances, scheduling medical appointments for clients, and otherwise addressing general issues with respect to client care.   After an internal financial audit, representatives for Hope Homes became aware that Hicks had made several purchases using client accounts for her own personal use.   The audit revealed that Hicks had been unlawfully taking money from clients' accounts over the course of approximately three years.   Based on the results of the audit, administrators for Hope Homes confronted Hicks and contacted the Fairborn Police Department.

{¶ 4} On October 6, 2014, Hicks was indicted for the following offenses: Counts I-V, theft from a disabled adult, in violation of R.C. 2913.02(A)(1), all felonies of the fourth degree; Counts VI-VIII, theft from a disabled adult, in violation of R.C. 2913.02(A)(1), all felonies of the third degree; and Count IX, theft from a disabled adult, in violation of R.C. 2913.02(A)(1), a felony of the fifth degree.   At her arraignment on October 24, 2014, Hicks pled not guilty to all of the counts in the indictment.

{¶ 5} On January 22, 2015, Hicks pled guilty to Counts I-IV, theft from a disabled adult, all felonies of the fourth degree; and Count VI, theft from a disabled adult, a felony of the third degree.   In exchange for Hicks' guilty plea, the State agreed to dismiss the

remaining counts. The State also agreed to recommend community control at sentencing. The trial court accepted Hicks' plea and found her guilty.

{¶ 6} At the sentencing hearing on March 11, 2015, the trial court sentenced Hicks to eighteen months in prison for each of Counts I-IV and thirty-six months in prison for Count VI. The trial court ordered that Hicks' sentences were to run consecutively for an aggregate sentence of 108 months (nine years) in prison. Restitution was ordered in the amount of $75,142.77.

{¶ 7} It is from this judgment that Hicks now appeals.

{¶ 8} Hicks' sole assignment of error on appeal is as follows:

{¶ 9} "THE TRIAL COURT IMPOSED MAXIMUM CONSECUTIVE SENTENCES THAT WAS [sic] NOT SUPPORTED BY EVIDENCE ON THE RECORD AND CONTRARY TO LAW."

{¶ 10} In her sole assignment, Hicks contends that the trial court's decision to impose maximum consecutive sentences was not supported by evidence in the record, and is therefore contrary to law.

{¶ 11} Initially, we note that Hicks was convicted and sentenced for four fourth degree felonies and one third degree felony. Pursuant to R.C. 2929.14(A)(3)(b), the basic prison term for a felony of the third degree *shall* be nine, twelve, eighteen, twenty-four, thirty, or thirty-six months (three years). For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(A)(4).

{¶ 12} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A).

{¶ 13} " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.' *State v. Nelson,* 2d Dist. Montgomery No. 25026, 2012–Ohio–5797, ¶ 62. 'However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12.' *Id."* *State v. Eicholtz,* 2d Dist. Clark No. 2012 CA 7, 2013–Ohio–302, ¶ 53.

{¶ 14} Before imposing a consecutive sentence, a trial court is required to find that: (1) "consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) any of the following:

    (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

    (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

    (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from

future crime by the offender.

R.C. 2929.14(C).

{¶ 15} As this Court recently noted in *State v. McGlothan,* 2d Dist. Clark Nos. 2014–CA–120, 2014–CA–121, 2014–CA–122, 2015–Ohio–2713, ¶ 12–13:

"On appeals involving the imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court 'to review the record, including the findings underlying the sentence' and to modify or vacate the sentence 'if it clearly and convincingly finds * * * [t]hat the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * * of the Revised Code.' " *State v. Bonnell,* 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, ¶ 28. In *State v. Rodeffer,* 2013–Ohio–5759, 5 N.E.3d 1069 (2d Dist.), we held that we would no longer use an abuse of discretion standard in reviewing a felony sentence, but would apply the standard of review set forth in R.C. 2953.08(G)(2).

Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *Rodeffer* stated that "[a]lthough [*State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124] no longer provides the framework for reviewing felony sentences, it does provide * * * adequate guidance for determining whether a sentence is clearly and convincingly contrary to law. * * * According to *Kalish,* a sentence is not

contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R.C. 2929.12." (Citations omitted.) *Rodeffer* at ¶ 32.

{¶ 16} Hicks does not claim that the trial court failed to make the statutory findings under R.C. 2929.14(C)(4); rather, she asserts that the record does not support the trial court's findings. Additionally, she points out that she had no criminal convictions prior to the instant case, other than minor misdemeanor traffic offenses.

{¶ 17} We begin our analysis by emphasizing that we in no way condone or wish to minimize the seriousness of Hicks' conduct in this case. To be sure, Hicks' financial misconduct occurred over a three-year period and encompassed some $75,000.00 of clients' funds. As a supervisor for Hope Homes, Hicks held a position of trust and authority over the mentally and physically disabled adults under her fiscal supervision, and she misused that position of trust and authority to gain access to their financial resources.

{¶ 18} Upon review, we conclude that while the trial court made all of the requisite findings pursuant to R.C. 2929.14(C)(4), we clearly and convincingly find that the record does not support the imposition of consecutive sentences in the instant case. When imposing maximum consecutive sentences, the trial court stated the following which was directly incorporated into Hicks' judgment entry of conviction:

The Court: The Court has decided that [Hicks] shall serve the prison terms consecutively, pursuant to O.R.C. 2929.14(C)(4), because the Court finds that consecutive service is necessary to protect the public from future

crime or to punish the Defendant and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public, and the Court also finds the following:

At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct.

Further, the Court finds that the Defendant, Charlene Hicks, while in a position of trust specifically engaged in a continuing course of conduct over a significant period of time, wherein she took advantage of and committed theft offenses upon the most vulnerable in our society, the disabled, on multiple occasions causing substantial hardship to multiple victims emotionally and financially.

{¶ 19} While Hicks received the maximum penalty for each count to which she pled guilty, her sentence was within the statutory range and thus, not contrary to law. In determining Hicks' sentence, the trial court indicated in the judgment entry of conviction that it considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. We have held, however, that "[a] trial court is not required to state that it considered R.C. 2929.11 and R.C. 2929.12. Unless the sentence is contrary to law, a trial court is presumed to have considered them." *State v. Neff,* 2d Dist. Clark No. 2012–CA–31,

2012–Ohio–6047.

{¶ 20} The trial court, indeed, articulated the findings required by R.C. 2929.14(C)(4) to impose consecutive sentences, namely that consecutive sentences are necessary to protect the public and punish Hicks, that consecutive sentences are not disproportionate to the seriousness of Hicks' conduct, and that she engaged in a course of conduct over a significant period of time that caused great or unusual harm. As this Court recently noted however, in *State v. Adams,* 2d Dist. Clark No. 2014–CA–13, 2015–Ohio–1160, ¶ 18, in which this Court determined that the record did not support the trial court's consecutive-sentence findings, while the sentencing court is not required to provide reasons to support its findings, " * * * an explanation of the rationale (both case-specific and statutory) for a sentence can only increase the public understanding of a particular sanction and thus the perceived legitimacy of the criminal justice system. *See, e.g.,* O'Hear, *Explaining Sentences,* 36 Fla.St.U.L.Rev. 459 (2009) * * *." This Court further cautioned in *Adams* as follows:

> "Formalism" has been described as scrupulous or excessive adherence to outward form at the expense of inner reality or content. We are concerned that our sentencing jurisprudence has become a rubber stamp for rhetorical formalism. It appears that consecutive sentences will be upheld on appellate review as long as the aggregate sentence is within the arithmetic long-addition established by the statutes and the trial judge and the entry state that this calculation is necessary to protect the public from future crime or to punish the offender, (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses

to the public, and (3) one or more of the offenses was committed while awaiting trial or sentencing. Here, the minimally-required statutory phrases were uttered, and a 22–year–old non-psychopathic addict, with only a previous juvenile suspended DYS commitment and no adult felony record, will spend the next twenty years in prison at the expense of the taxpayers, not to mention the damage to him and to the community where he will be released.

*Adams,* ¶ 30.

{¶ 21} On the record before us, we clearly and convincingly find a lack of support for the trial court's consecutive-sentencing findings. As noted above, Hicks was fifty-two years old at the time of the offenses. By all accounts, Hicks led a lawful life prior to the offenses, having not been adjudicated a delinquent child and with no adult criminal history. *See* R.C 2929.12(E)(1)-(3). While Hicks only attended high school through the tenth grade, her PSI indicated that she had received her GED. We note that in Hicks' PSI, the probation department recommended that she serve an aggregate sentence of three years, with all prison terms to run concurrent to one another.

{¶ 22} Additionally, Hicks' PSI does not indicate that she has any problems with drugs, alcohol, or any other compulsive, vice-like behavior. Rather, Hicks stated that her husband became sick and passed away during the time in which she committed the instant offenses, and that she used the money that she stole from her clients' accounts to pay for medications for her husband and for funeral expenses after he died. Hicks also stated that she used the stolen money to pay bills, to keep her car operational, and to keep her home in repair. We note that the State did not allege any alternative theories

regarding how Hicks spent the money she stole. While this is no excuse or justification for what she did, these facts are not conducive to recidivism given her age, lack of prior incarceration, and otherwise decades of law-abiding life. This conclusion is supported by Hicks' PSI, which indicates that there were no statutory or non-statutory factors tending to show that Hicks is likely to commit future crimes. *See State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082 (2d Dist.)

**{¶ 23}** Regarding the trial court's determination that at least two offenses were committed as part of one course of conduct, and that the harm caused by two or more of the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the defendant's conduct, we note that there is no evidence that Hicks caused physical harm to any of the residents subject to her fiscal supervision, hence the conduct does not fit into the category of "the harm is so great or unusual that no single prison term adequately reflects the seriousness" thereof.

**{¶ 24}** We recognize that the record reveals that one victim authored a letter to the trial court in which he stated that because Hicks stole money from him, he was not able to take a trip to the Smokey Mountains which he stated had been a "dream of [his]." The same victim also stated that he was deeply hurt by Hicks' conduct and had a difficult time trusting any new care providers. A representative for Torg Independence, the new company that took over for Hope Homes, stated that she had to purchase cat litter for one of the victims because his apartment smelled bad. The Torg representative also indicated that all of the victim's utility bills were in arrears and that he had received disconnect notices because none of his bills had been paid as a result of Hicks' theft. However, none of his utilities had been disconnected. The Torg representative also

noted that the same victim only had one pair of pants and one pair of underwear to wear when she contacted him, but several shirts. The representative blamed this on Hicks' decision to steal the victim's money rather than purchase clothes for him. Lastly, a mother and guardian of the one of the victims stated that her son, who is completely physically disabled and non-verbal, is now very distrustful and suspicious of his care providers because Hicks stole from him. We recognize that this is an emotional cost/harm for which Hicks is deserving of punishment.

{¶ 25} Certainly, Hicks' conduct reasonably supports imposition of a sentence within the upper ranges of R.C. 2929.14(A)(3)(b), which authorizes sentences of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months (three years) for third-degree felony offenses, and note the range for fourth degree felonies. However, and with that said, the principles and purposes of felony sentencing in R.C. 2929.11 nevertheless require the trial court in imposing its sentence to also consider, among other things, rehabilitating the offender. In our view, by sentencing this fifty-two year–old, first-time, non-violent offender to nine years in prison, the trial court failed to reasonably consider the concept of rehabilitation, as well as recidivism.

{¶ 26} In recent cases, we have reversed sentences imposed by trial courts when the record fails to support conclusions required to impose consecutive sentences. In *State v. Overholser,* 2d Dist. Clark No. 2014–CA–42, 2015–Ohio–1980, we reversed a judgment imposing consecutive sentences for five counts of gross sexual imposition because the record did not support the statutory factors required for imposing consecutive sentences, when the defendant was remorseful, his risk of recidivism was low, he had no criminal history, and the offenses were not more egregious

than similar offenses. *Id.* at ¶ 29–32. We noted that the excessive sentence "may in fact demean the seriousness of other more violent crimes and harm to other victims" and that the record "did not demonstrate that consecutive service is the minimum sanction to accomplish the purposes and principles of sentencing without imposing an unnecessary burden on the State." *Id.* at ¶ 32–33. Similarly, in *State v. Adams,* 2d Dist. Clark No. 2014–CA–13, 2015–Ohio–1160, we reversed a judgment imposing consecutive sentences for three counts of burglary and one count of heroin possession, because the record did not support the statutory factors required for imposing consecutive sentences, when the defendant was remorseful, he was seeking drug treatment, he had no criminal convictions as an adult, none of the offenses involved violence, the harm to the victims was minimal, and the offenses were not more egregious than similar offenses. *Id.* at ¶ 20–29.

{¶ 27} We also reiterate here that as part of the plea agreement, the State agreed to recommend probation as an inducement for Hicks to plead guilty and forego a trial. This particular issue was analyzed in a concurring opinion by Judge William Wolff in *State v. Lewis*, 2d Dist. Greene No. 2004-CA-101, 2005-Ohio-3736, wherein he stated the following:

A sentencing recommendation is an inducement to forego the right to trial and *is only a proper inducement if it is a realistic recommendation.*

This is not to say that an unrealistic sentencing recommendation is necessarily a basis for reversal. Assuming arguendo that the recommendation here was unrealistic, the trial court made it abundantly clear to Lewis that the court was not bound by the State's recommendation.

That having been said, the integrity of the practice of plea negotiation – which is essential to the efficient administration of the criminal justice system – is better served by realistic sentencing recommendations.

\*\*\*

*Realistic sentencing recommendations can only serve the objective of well considered, well counseled pleas of guilty and no contest.*

{¶ 28} Based on our review of the record, we clearly and convincingly find that the record fails to support the findings necessary for the imposition of consecutive sentences.

{¶ 29} Hicks' sole assignment of error is sustained.

{¶ 30} Hicks' sole assignment of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded for the imposition of concurrent terms.

. . . . . . . . . .

FROELICH, J., concurs.

WELBAUM, J., dissenting.

{¶ 31} I very respectfully disagree with the majority's conclusion that the trial court's decision to impose consecutive sentences should be reversed. Rather, I find this to be an extremely close case in which the outcome differs based upon how the standard of review in R.C. 2953.08(G)(2) is applied to the facts of this case.

{¶ 32} Appellate judges sometimes disagree with sentences, yet affirm based upon the applicable standard of review set forth in R.C. 2953.08(G)(2). This statute provides that where the trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does

not support the trial court's findings. The restriction is on the appellate court, not the trial judge. It is a very deferential standard of review which prohibits appellate courts from substituting their judgment for that of trial judges. *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 31 (2d Dist.), citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.). Therefore, the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record does not support the trial court's findings. *Id.* I believe the dissenting opinion in *State v. Kay,* 2d Dist. Montgomery No. 26344, 2015-Ohio-4403 is correct in that the consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result. *Id.* at ¶ 26 (Hall, J., dissenting).

**{¶ 33}** In this case, I do not believe the record overwhelmingly supports a contrary result. Hicks methodically committed multiple thefts totaling $75,000 over a three-year period. Her thefts involved numerous disabled victims who were vulnerable and who trusted her. Hicks had a duty to protect and care for these victims and yet she stole from them over and over again despite their needs being unmet as a result. For instance, as noted by the majority, one of the victim's utility bills went unpaid and one of the victims was left with only one pair of pants and underwear due to Hicks's thefts. Another one of the victims suffered emotional harm and remains distrustful and suspicious of his caretakers.

**{¶ 34}** Based on these facts, it is difficult to clearly and convincingly find that that the record does not support the trial court's consecutive sentence findings. "[E]ven a record that is largely silent is not clearly and convincingly contrary to a trial court's consecutive-sentencing determination unless there is substantial affirmative factual

information in support of the defendant to conclude that the trial court is clearly wrong." *Kay* at ¶ 27 (Hall, J., dissenting). Here, the factual information in the record indicates the trial court's findings are debatable, but not clearly wrong.

{¶ 35} In my opinion, the consecutive sentence finding that is debatable is whether "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Admittedly, there are aspects of the record that are troubling with regards to this finding, such as the fact that Hicks is a 53-year-old first time offender, her low risk assessment in the PSI, and the sentencing recommendations provided by the probation department and the State.

{¶ 36} However, the risk assessment and recommendation of the probation department are not controlling, nor is the State's recommendation. The fact that the prosecutor, probation department, and trial court arrived at different conclusions about the appropriate sentence is of slight consequence regarding the question posed by the standard of review in R.C. 2953.08(G)(2). Moreover, although the imposition of consecutive sentences must not be disproportionate to the seriousness of the harm, it need not be physical harm.

{¶ 37} While Hicks's lack of a criminal record tends to indicate that she poses a minimal danger to the public, there are other parts of the record which support the trial court's finding that consecutive sentences are not disproportionate to the danger she poses. Specifically, the trial court highlighted the fact that Hicks engaged in a course of criminal conduct over a significant period of time. The fact that Hicks's theft was not a one-time incident, but an ongoing criminal endeavor against multiple victims, indicates that she has the ability to continue down a criminal path, thereby exhibiting a sustained

danger to members of the public, particularly those who are disabled and vulnerable. The large amount of money stolen and the impact it had on the victims also indicates that Hicks is capable of committing serious harm.

**{¶ 38}** It is inapposite that this court may disagree with the sufficiency or weight of these facts, as it only matters that there are facts in the record that arguably support the trial court's finding. This alone should prevent us from concluding that the finding is clearly and convincingly unsupported by the record. Also, like the dissenting opinion in *Kay*, I "reject the idea that when analyzing consecutive-sentence determinations under R.C. 2929.14(C)(4) either the trial court or this court is limited to the specific factors listed in R.C. 2929.12." *Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403 at ¶ 28 (Hall, J. dissenting).

**{¶ 39}** For the reasons stated above, I cannot clearly and convincingly find that the record does not support the trial court's consecutive sentence findings. Therefore, I very respectfully dissent from the majority and would affirm the trial court's decision to impose consecutive sentences in this matter.

. . . . . . . . . .

Copies mailed to:

Anu Sharma
Daniel E. Brinkman
Hon. Michael A. Buckwalter