[Cite as *State v. Eytcheson*, 2018-Ohio-2036.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee             :   C.A. CASE NO. 27650
                                       :
v.                                     :   T.C. NO. 2017-TRD-3894
                                       :
KELLY W. EYTCHESON                     :   (Criminal Appeal from
                                       :   Municipal Court)
    Defendant-Appellant            :
                                       :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 25th day of May, 2018.

. . . . . . . . . .

NOLAN THOMAS, Atty. Reg. No. 0078255, 2325 Wilmington Pike, Kettering, Ohio 45420
    Attorney for Plaintiff-Appellee


KELLY W. EYTCHESON, P.O. Box 751893, Dayton, Ohio 45475
    Defendant-Appellant, pro se

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the July 7, 2017 Notice of Appeal of Kelly Wayne Eytcheson. On May 24, 2017, Eytcheson was cited by City of Kettering patrol officer Shiloh Colon for failure to reinstate a driver's license, in violation of R.C. 4510.21, and failure to wear a seatbelt, in violation of R.C. 4513.263, and he was found guilty following a June 22, 2017 bench trial in Kettering Municipal Court. The court imposed a fine of $150.00 for failure to reinstate, all of which it suspended, and it imposed a fine of $30.00 for the seatbelt violation. After addressing Eytcheson's 15 assignments of error, and reviewing his reply brief, filed April 2, 2018, we hereby affirm the judgment of the Kettering Municipal Court.

{¶ 2} At the start of the bench trial, the court noted that Eytcheson filed a jury demand, as well as a motion to dismiss. The court advised Eytcheson that "under Ohio law there, and under Federal law, there is no right to a Jury trial in an offense of this nature. Neither of these charges carries the potential for jail time." The court further indicated that it reviewed Eytcheson's motion to dismiss and gave him an opportunity to make additional arguments. Eytcheson responded that "everything that I needed to say was in that motion," and the court overruled the motion to dismiss. Attached to Eytcheson's motion to dismiss is an invoice for damages he claims were attributable to Officer Colon in the amount of $293,180.00, and the court noted that "you also have in here what appears to be a demand for damages which is really not before the Court properly so I'm not going to deal with that today."

{¶ 3} Officer Colon testified that on May 24, 2017, at approximately 1:56 p.m., she observed the driver of a maroon Toyota minivan near the intersection of Woodman Drive

and East Dorothy Lane without a seatbelt. She stated that the vehicle "was sitting on Woodman to turn east on Dorothy," and that as "he followed through the turn he didn't maintain the lane closest to him and went directly into the right lane and then ended up turning into the plaza there." Colon stated that the driver did not signal the right turn into the plaza. She testified that she stopped the vehicle, which was driven by Eytchseon, for the improper turn. Colon stated that in the course of the traffic stop, she learned that the status of Eytcheson's license was "[s]uspended." Colon stated that she cited him for the seatbelt violation and the failure to reinstate his license, and that she gave him a verbal warning for the improper turn. The officer identified Eytcheson in court as the person she cited, and she identified his certified driving record reflecting the failure to reinstate his license since 1997.

{¶ 4} The first of Eytcheson's assignments of error is as follows:

THE TRIAL COURT ERRED IN CONTINUING TO ERRONEOUSLY MISIDENTIFY ME, EYTCHESON, KELLY WAYNE [,] AS A LEGAL FICTION BY UTILIZING AN ALL CAPS MONIKER, EVEN AFTER BEING ADVISED OF THE MISNOMER AB INITIO.

{¶ 5} Eytcheson asserts that "Officer Shiloh Colon, Prosecutor Nolan C. Thomas, Esq., 'judge' Frederick W[.] Dressel, and Trial Court Recorder one Pamela A. Unger all continued to refer to me as a legal fiction and in all capitals KELLY W EYTCHESON throughout all proceedings, even after being notified by me that it was not my name nor identity." He argues that "since I am not a corporate employee, fictional corporation, liquidated capital, nor any other legal fiction, nor did the prosecution present any evidence to the contrary, reversal with prejudice of the Trial Court's decision is appropriate and

requested as a matter of Law since I am not the named defendant." Eytcheson directs our attention to the "Transcript cover page, each filing by the Court and/or it's [sic] officers, and every reference to my comments in the Transcript."

{¶ 6} As noted above, Officer Colon, in court, properly identified Eytcheson as the driver she observed commit traffic offenses, whom she stopped and cited, and the appearance of Eytcheson's name in capital letters does not constitute trial court error. Identification was definitively established. Whether his name is displayed in lower or upper case is of no legal consequence. This assignment of error is accordingly overruled.

{¶ 7} Eytcheson's second assignment of error is as follows:

THE TRIAL COURT ERRED IN ERRONEOUSLY BRANDING ME AS A PRO SE LITIGANT AS OPPOSED TO A LITIGANT IN PROPRIA PERSONA.

{¶ 8} Eytcheson asserts that "[s]ince the Latin Pro Se, indicates that I am advocating on the behalf of a bonded corporate name, and I have never done this, knowingly, intentionally, nor voluntarily, all three [are] required for a bona fide lawful contract to exist." He asserts, "I have always stood in propria persona, Latin for in my proper person. As you know, that means that I am defending myself and not a corporate fiction."

{¶ 9} According to Black's Law Dictionary, "[p]ro se" means "[o]ne who represents oneself in a court proceeding without the assistance of a lawyer." *Black's Law Dictionary* 1258 (8th Ed. 2004). "In propria persona" means "in one's own person." *Id.* at 808. Eytcheson proceeded to trial without the assistance of an attorney. Thus, trial court error

is not demonstrated in this assignment of error. Eytcheson's second assignment of error is overruled.

{¶ 10} Eytcheson's third assignment of error is as follows:

THE TRIAL COURT'S MR. DRESSEL ERRED BY DENYING APPELLANT A CONSTITUTIONAL TRIAL BY JURY IN VIOLATION OF CONSTITUTION FOR THESE UNITED STATES.

{¶ 11} According to Eytcheson, he is "entitled to a Constitutional Trial by Jury according to the Supreme Document of Law of this Land by my birth in this land of the free and home of the brave and not a land of the fee [sic] and home of the slave."

{¶ 12} R.C. 2945.17(B) provides:

(B) The right to be tried by a jury that is granted under division (A) of this section does not apply to a violation of a statute or ordinance that is any of the following:

(1) A violation that is a minor misdemeanor;

(2) A violation for which the potential penalty does not include the possibility of a prison term or jail term and for which the possible fine does not exceed one thousand dollars.

{¶ 13} R.C. 4510.21(C)(1) provides that "the offender shall not be sentenced to a jail term," and "the offender may be fined up to one thousand dollars." R.C. 4513.263 provides that whoever violates R.C. 4513.263(B)(1) "shall be fined thirty dollars," and the offense is a minor misdemeanor. R.C. 2901.02(G)(2). Eytcheson was not entitled to a trial by jury, and his third assignment of error is accordingly overruled.

{¶ 14} Eytcheson's fourth assignment of error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT[']S FILINGS WHICH DOCUMENTED SUPREME COURT DECISIONS AND POSITIVE LAWS SPECIFICALLY ADDRESSING APPELLANT[']S DEFENSE.

**{¶ 15}** Eytcheson asserts that in his fourth assignment of error he "relies on the documentation contained in the identified filings and [sic] are referenced as if fully rewritten and included here." Having determined that Eytcheson was not entitled to a trial by jury, we construe this assignment of error to assert that the trial court erred in overruling Eytcheson's motion to dismiss. Eytcheson asserts that Officer Colon "started the process of penalizing me for the exercise of a Constitutional Right to freely Travel, of which all Justices are keenly aware is unconstitutional especially since no compelling governmental interest was stated nor expressed in evidence at Trial." He further asserts that if "the state converts a right into a privilege and charge [sic] a license and a fee for it **the citizen can ignore the license and the fee, and engage in the right with impunity.** This means, as you well know, that you cannot punish me for exercising my Constitutional Right, not any of them." (Emphasis sic.) Finally, Eytcheson appears to suggest that Colon violated R.C. 4513.263(D).

**{¶ 16}** Eytcheson's arguments are repetitive of those in his motion to dismiss. We note that in overruling Eytcheson's motion to dismiss, the court advised him in part as follows:

* * * And regarding your argument as to the right to the travel that has to be distinguished from the privilege of operating a motor vehicle. Driving a vehicle on a public roadway is only one form of travel. By

authorizing states to pass reasonable regulations to control traffic, insure safety that is more [sic] Court cases than you can shake a stick at have held that the State has that authority and it does not violate the Constitutional right of the citizens to travel. * * *

**{¶ 17}** "We review de novo a trial court's decision on a motion to dismiss." *State v. Fields*, 2017–Ohio–400, 84 N.E.3d 193, ¶ 19 (2d Dist.). "De novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Clay*, 2d Dist. Miami No. 2015–CA–17, 2016–Ohio–424, ¶ 5." *State v. Gaines*, 2d Dist. Clark No. 2017-CA-67, 2017-Ohio-8906, ¶ 14.

**{¶ 18}** In *State v. Matthews*, 2d Dist. Greene No. 2015-CA-73, 2016-Ohio-5055, ¶ 7, Anthony Matthews asserted that "freedom and movement and travel are 'rights' which cannot be unconstitutionally 'converted' into a governmental privilege by requiring licensure and registration." This Court concluded as follows:

* * * [T]here is no fundamental right to drive a motor vehicle, and a "burden on a single mode of transportation simply does not implicate the right to interstate travel." *St. Paris v. Galluzzo* [2d Dist. Champaign No. 2014-CA-4, 2014-Ohio-3260] at ¶ 15, quoting *State v. Gunnell*, 10th Dist. Franklin No 13AP–90, 2013–Ohio–3928, ¶ 13 (which quoted *Duncan v. Cone*, 6th Cir. No. 00–5705, 2000 WL 1828089 (Dec. 7, 2000)). "The right of a citizen to operate a motor vehicle upon the highways of this state is not a natural or unrestricted right, but a privilege which is subject to reasonable regulation under the police power of the state in the interest of public safety and welfare." *State v. Starnes*, 21 Ohio St.2d 38, 45, 254 N.E.2d 675 (1970),

quoting *Blow v. Commr. of Motor Vehicles,* 64 N.W.2d 351, 352 (S.D.1969).

Licensure and registration are such reasonable regulations.

*Id.*

**{¶ 19}** Based upon the foregoing, we conclude that the trial court properly distinguished between the right to interstate travel and the privilege of operating a motion vehicle, which is subject to reasonable regulation.

**{¶ 20}** Regarding Eytcheson's assertion that Officer Colon violated the seat belt statute, R.C. 4513.263(D) provides:

Notwithstanding any provision of law to the contrary, no law enforcement officer shall cause an operator of an automobile being operated on any street or highway to stop the automobile for the sole purpose of determining whether a violation of division (B) of this section has been or is being committed or for the sole purpose of issuing a ticket, citation, or summons for a violation of that nature or causing the arrest of or commencing a prosecution of a person for a violation of that nature, and no law enforcement officer shall view the interior or visually inspect any automobile being operated on any street or highway for the sole purpose of determining whether a violation of that nature has been or is being committed.

**{¶ 21}** Officer Colon did not testify that she made the traffic stop for the observed seatbelt violation. Rather, the following exchange on direct examination by the State establishes Officer Colon's basis for the stop:

Q.   *** [S]o if I understand your testimony correctly the left-hand turn

instead of continuing left through lane of eastbound Dorothy he turned into the curb lane of eastbound Dorothy?

A. Correct.

Q. Based on what you observed did you believe there had been a moving violation committed under Ohio law?

A. Yes.

Q. And that was for the improper turn correct?

A. Yes.

Q. When you saw that did you make a stop there in the parking lot of that shopping center?

A. Yes I did.

{¶ 22} Based upon Colon's testimony, we conclude that she did not violate R.C. 4513.263(D). For the foregoing reasons, we conclude that the trial court did not err in overruling Eytcheson's motion to dismiss, and Eytcheson's fourth assignment of error is overruled.

{¶ 23} Eytcheson's fifth assignment of error is as follows:

THE TRIAL COURT ERRED BY FAILING TO PROVIDE A TRANSCRIPT OF ALL PROCEEDINGS IN THIS INSTANT CASE.

{¶ 24} Eytcheson argues as follows:

Officer Colon violated her oath of office in looking into my private mode of conveyance to ascertain whether or not I was seatbelted [sic]. She then stopped me for it as she said at the scene. Even though I requested the transcript of all proceedings, the proceedings at the scene

were not included, nor was any documentation in the form of audio/video proffered. This prevents me from addressing it precisely to the 2nd District Court of Appeals thereby prejudicing the Appeal against me for lack of proof. * * * [I]f [Officer Colon] is a law enforcement officer, she is presumed to know the law. Instead Mr. Dressel protected her from revealing that she did not know even the statutes she was utilizing to ticket me with. The maxim, Ignorance of the law is no excuse[ ] would be what would undoubtedly have been used against me if I stated that I didn't know some obscure fact of a statute, law, ordinance, etc. However, she was excused and defended by Mr. Dressel not less than 3 times during trial. * * *

{¶ 25} There is no suggestion in the record that a recording or transcript of Eytcheson's traffic stop exists, and the trial court is only required to provide the transcript of the proceedings that occurred before it for purposes of appeal. *See* App.R. 9(B). There is also nothing in the record to suggest the State received a written demand for discovery from Eytcheson for any such recording or transcript from the scene, pursuant to Crim.R. 16, which governs discovery. Eytcheson's argument that the trial court failed to provide a transcript lacks merit.

{¶ 26} Regarding his remaining argument that the trial court "protected" Colon, the record reflects that Eytcheson asked Colon if she was familiar with the definitions provided in R.C. 4501.01, and if they were in conflict with "Bouvier's Law Dictionary in regarding to the definition of driver," and the court sustained the State's objection, noting, "* * * Her opinions or ability to cite the law off the top of her head or interpret the law, she's not qualified and it's not an issue before the court." The court further indicated, "I dare

say very few people know every section of the Ohio Revised Code off the top of their heads without having the code in front of them. So please move along." Eytcheson further asked Colon, "is a [sic] Ohio Revised Code law or is it a statute," and upon sustaining the State's objection, the court advised Eytcheson that Colon "is not qualified as an expert to testify as to that interpretation of the law."

{¶ 27} As noted above, Colon clearly testified that she observed Eytcheson commit a traffic violation, namely an improper turn, and that she stopped him for the improper turn and cited him for violations of R.C. 4513.263 and R.C. 4510.21, as reflected on the citation she issued. Eytcheson's argument that the trial court "protected" her lack of familiarity with the law lacks merit. Eytcheson's fifth assignment of error is overruled.

{¶ 28} Eytcheson's sixth assignment of error is as follows:

THE TRIAL COURT ERRED IN NOT REQUIRING OFFICER COLON TO HAVE PROPERLY "MIRANDIZED" ME IN ACCORDANCE WITH MIRANDA V. ARIZONA 384 U.S. 436 (1966).

{¶ 29} As this Court has previously noted:

Under the Fifth Amendment of the Constitution, no person can be compelled to testify against himself, and those who are accused have a right to the assistance of counsel. "In light of the inherent coercion involved in custodial interrogation, *Miranda* established 'a set of prophylactic measures' to safeguard the constitutional privilege against self-incrimination." *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 22, quoting *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), which in turn cites *Miranda v. Arizona*

384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

"In broad terms, *Miranda* held that the state may not use a defendant's statements from custodial interrogation 'unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' " *Barker* at ¶ 22, quoting *Miranda* at 444, 86 S.Ct. 1602. "Prior to questioning, the police must warn the suspect 'that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' *Id. * * *

*State v. Flores-Lopez,* 2017-Ohio-690, 85 N.E.3d 534, ¶ 30-31 (2d Dist.).

**{¶ 30}** As this Court has further noted, " '[a] police officer may lawfully stop a vehicle, motorized or otherwise, if he has a reasonable, articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation.' *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 14." *State v. Brown,* 2d Dist. Montgomery No. 25204, 2012-Ohio-5532, ¶ 9. Here, Eytcheson was properly stopped for an improper turn.

**{¶ 31}** As this Court further noted in *Brown*:

The United States Supreme Court has held that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody for the purposes of *Miranda*." *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S. Ct. 3138, 82 L.Ed.2d 317 (1984). Therefore, routine roadside questioning of a driver during an ordinary traffic stop does not constitute a custodial interrogation

requiring *Miranda* warnings.   *Id.*; *Pennsylvania v. Bruder*, 488 U.S. 9, 10,

109 S.Ct. 205, 102 L.Ed.2d 172 (1984).

*Id.*, ¶ 10.

**{¶ 32}**  Eytcheson was not in custody for purposes of *Miranda*, and Colon was

accordingly not required to advise him of his *Miranda* rights.   Eytcheson's sixth

assignment of error is overruled.

**{¶ 33}**  Eytcheson's seventh assignment of error is as follows:

THE TRIAL COURT ERRED IN INFORMING ME NO LESS THAN

10 TIMES THAT I WOULD BE ABLE TO MAKE MY ARGUMENT IN MY

CLOSING.   HE THEN GAVE ME A TIME LIMIT SO I COULD NOT FULLY

EXPRESS MY ARGUMENTS.

**{¶ 34}**  According to Eytcheson, "Mr. Dressel exhibited prejudicial damage to me

with respect to my closing arguments."

**{¶ 35}**  As noted by the Seventh District:

* * * Closing arguments provide the defense with an opportunity to

summarize the evidence and serve as a "basic element of the adversary

factfinding process."   [*Herring v. New York,* 422 U.S. 853, 858, 95 S.Ct.

2550, 45 L.Ed.2d 593 (1975).]   Accordingly, the defendant cannot be

denied the opportunity to make a closing argument even if the matter is a

bench trial that appears "open and shut" at the close of the evidence.   *Id.*

at 862-863.   However, although the defendant must be afforded an

opportunity to make a closing argument and is afforded wide latitude in

making such an argument, a trial judge retains discretion to limit the duration

and scope of closing arguments. *Id.*; *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194. Thus, a trial judge's limitation on closing arguments will not be reversed absent an abuse of discretion. *Pang*, 53 Ohio St.3d at 194.

*State v. Glasure*, 7th Dist. Carroll No. 724, 2000 WL 748137, *2 (May 23, 2000).

**{¶ 36}** As this Court has noted:

Generally, " 'abuse of discretion occurs when a decision is grossly unsound, unreasonable, illegal, or unsupported by the evidence.' " *Id.* (quoting *State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶ 16 (2d Dist.)). A "decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* (citing *State v. Jones*, 2d Dist. Montgomery Nos. 25315 & 25316, 2013-Ohio-1925, 2013 WL 1944001, ¶ 32; *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, 2014 WL 7463132, ¶ 7). When "applying [this] standard, an appellate court may not merely substitute its judgment for that of the trial court." *Id.* (citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990)).

*State v. Keller*, 2017-Ohio-2609, 90 N.E.3d 176, ¶ 6 (2d Dist.)

**{¶ 37}** The following exchange occurred in the course of Eytcheson's closing argument:

COURT: * * * All right Mr. Eytcheson. Go ahead and sum up your case.

EYTCHESON: This case is about those two charges that are listed on citation number K00059898 but it goes further than that.

Notwithstanding that you have overruled that entire document you cannot overrule the Constitution for United States Article VI, Section II; Article I; Amendment I through X; which are the Bill of Rights an integral [sic]. Our rights to the Constitution shall remain un-infringed and unrestricted totally by not only the Constitution by *Marbury versus Madison*. I have relied upon those two plus *Shapiro versus Thompson 394 U.S. 634* settled in 1969 and not overturned at any time which specifically states that in moving from jurisdiction to jurisdiction we exercise a Constitutional right, and any classification which penalizes the exercise of the right, unless shown to be necessary to promote a compelling governmental interest, is unconstitutional. And the burden of showing that compelling governmental interest is not mine, nor to prove a negative, which is really kind of impossible. That has not been demonstrated by the Prosecution at all. Further the Court long ago recognized that the nature of our Federal Union and our Constitution [sic] concepts of personal liberty unite to require that all citizens be free to travel through the length and breadth of our land uninhibited by statues [sic], rules, regulations, policies, procedures and practices which unreasonably burden or restrict this movement. And while I don't have the case citing for you at this time it is well understood that that's another Supreme Court decision as stated if there is no injured party there can be no criminal charges.

COURT: Okay.

EYTCHESON: To me it is blatantly clear that the Constitutional

rights may not be infringed abridged or abrogated by anyone without committing an unconstitutional act against one exercising those Constitutional rights.

COURT: Okay. Thank you.

EYTCHESON: Excuse me?

COURT: Thank you. You're repeating . . .

EYTCHESON: I'm not finished sir.

COURT: You [sic] repeating everything that I've already ruled on.

EYTCHESON: I'm not finished sir.

COURT: Well you've got three minutes so get going.

EYTHCHESON: I'm not aware of any time constraint that I have to have things said by.

COURT: Okay. Well I've just put a time constraint on you. You're repeating the same arguments over and over. So wind it up.

EYTCHESON: *Murdock versus Pennsylvania 319 U.S. 105*, settled in 1943, the Court held a state may not impose a charge for the enjoyment of a right granted by the Federal Constitution. The Constitution of the United States. Thus it may not exact a license tax for the privileges of carrying on interstate commerce. In addition to that *Shuttlesworth versus City of Birmingham Alabama, 373 U.S. 262* and also settled in 1963, the Court held that if the State converts a right into a privilege, there's a distinction there between one and the other, and charge a license and a fee for it the citizen can ignore the license and the fee, and engage in the right

with impunity. That means you cannot punish me for engaging in that right. Black's Law Dictionary describes willful. And it specifically states that it is, it is a common understanding that willful also means malicious or with evil intent. I did nothing willfully or with evil intent. One of the three requirements that Mr. Thomas the Prosecutor has to do is to prove willfulness. But since I have relied on the Constitution and previously settled and shephardized well-established cases from the United States Supreme Court I have a perfect defense against willfulness since I have not willfully done an evil or malicious act. I have not been afforded the opportunity to face my accusers. Officer Colon makes one statement but she didn't say in any way that she was an injured party. Not in her[ ] testimony, not by the Prosecution.

COURT: One minute sir.

EYTCHESON: *Am Jur 16, Volume 16, Second Edition, at Sections 97, 114 to 117, Section 165, Section 256, 257, and 260*, all basically say that if there is something that is something [sic] that is repugnant to the Constitution which I understand that nobody wants to admit; but if there's something that is repugnant to the Constitution it is null and void ab initio. Latin terms for at its inception as I'm sure you're well ware. *Title 18, U.S. Code, Section 2381*, as the Prosecutor brought up and asked me about. Yes it does states [sic] there that someone who violates the rights of the American people should be taken to the nearest busy intersection upon conviction of that, taken to the nearest busy intersection and hung by the

neck until dead, their body to lie in state there, at there [sic] hung until dusk. It does say that.

COURT: Okay. Well we're . . .

EYTCHESON: I do not believe that that is an appropriate action for what she has done. However that's what the law says.

COURT: Okay. I'm glad you don't believe that but we're, we're, you have ten second[s]. So get your last thought out.

EYTCHESON: I was never advised of my rights according to *Miranda versus Arizona* settled in 1966. And based on that and that the Ohio Revised Code she admits to stopping me because of . . .

COURT: Okay.

EYTCHESON: . . . she, her observance in the car, which is a violation of your own Ohio Revised Code. Fruit of the poisoned tree means that the fruit born from that tree is also poison. And that is a . . .

COURT: Okay. Well Mr. Thompson any response. You get the last word?

{¶ 38} We see no abuse of discretion in the municipal court's limitation of Eytcheson's closing argument. The authorities cited by Eytcheson and the arguments advanced by him were repetitive of those in Eytcheson's motion to dismiss, which the trial court previously considered and properly overruled. The trial judge provided Eytcheson ample leeway during closing, as the court did throughout trial. Eytcheson's seventh assignment of error is overruled.

{¶ 39} Eytcheson's eighth assignment of error is as follows:

THE TRIAL COURT ERRED WHEN MR. DRESSEL WOULD NOT ALLOW ONE OF TWO DOCUMENTS WHICH ARE ALLOWED UNDER YOUR ORC 4513.263 ¶ (C) TO BE USED AS JUSTIFICATION FOR NOT WEARING A SEATBELT/SHOULDER HARNESS WHILE MANIPULATING THE CONTROLS OF A MODERN MODE OF CONVEYANCE. MR. DRESSEL ALSO MADE THE PREJUDICIAL STATEMENT THAT THIS DOCUMENT WAS NOT RELEVANT TO THE CHARGES WITHOUT EVER READING THE DOCUMENT AMOUNTING TO VIOLATION OF MY RIGHTS TO DUE PROCESS.

**{¶ 40}** According to Eytcheson, in "attempting to provide evidence to the Trial Court which would aid in my defense of the charges against me, Mr. Dressel prevented me from doing so due to the Prosecutor's objection to its admission."

**{¶ 41}** The following exchange occurred at trial:

THE COURT: * * * You want to tell me anything more about the facts that happened? What happened out there?

EYTCHESON: After she gave that to me at some point she had called for backup and another car arrived. Not a problem or [sic] all. Whether it's one or it's fifty people in there it doesn't matter. Because I did not believe in any way shape or form as I have for over twenty plus years that I was required to have a driver's license from the State of Ohio, particularly when I am no longer a resident of the State of Ohio. Because, you want me to do that later so I will deal with that later. I would also submit to this Court in accordance with your Ohio Revised Code a document from

my chiropractor which identifies why I was not wearing a seatbelt. And that happens to be that when I was in the hospital for my diabetic coma and my, my surgical amputation the hospital also discovered that I needed a cardiac ablation and in preparation for that particular procedure they had to get nuclear pictures and so I was taken down to nuclear medicine. They transferred me from my hospital bed which has nothing to do with the citation specifically except that it has to do with why I don't wear a seatbelt. Because of that . . .

THE COURT: Okay.

EYTCHESON: Because of that process when they were transferring me from my hospital over to the nuclear med table to get the nuclear pictures of what was going on in my heart from a chemical stress test they were doing, five people picked me up and started to slide me over even though the slide board was right next to them, they chose not to do it thinking they had enough people to transfer me over without using that. The two people that were on the leading edge or pulling me toward them, they used it as a drag sheet and drug me straight across. The three people on the trailing end or the side that they would be picking up and pushing it over, they did their job. But the two that were pulling did not lift me up. The height of my bed and the height of their table, which was a solid table; not just a bed with a mattress on it, was about six or eight inches higher. When they pulled me over they slammed my back, my whole spine into that table. I instantain [sic] . . . we all heard a big crack and everything went silent

except me screaming and hollering.

COURT: And when did this happen?

EYTCHESON: This happened on the 25th of August in 2012 sir.

COURT: Okay.

EYTCHESON: Since then other than six times that my chiropractor has had me numb free which shows that it had to do with the alignment of the spine, six times since that time I have been numb free completely in my body. But other than those specific times which lasted only for a few minutes I have been numb in my hands, in my forearms from somewhere on my femur on both legs, bilaterally from there to my toes. I don't have feeling in my feet at all. So that is the situation. Now in regards to that when I have any pressure . . .

THOMAS: Judge. Judge I'm gonna object and ask the Court to . . .

COURT: I think that you're getting way off on a tangent. I understand you may have some medical issues. They may feed into whether or not you're comfortable wearing a seatbelt. But it's really far beyond the scope of the trial. Okay. I mean if you want, if your summary is you've endured this medical issue and as a result you have pain and numbness and that's why you don't wear a seatbelt then that's fine. But I don't think that getting into all the details of, of your medical history is really relevant other than for that purpose. So . . .

EYTCHESON: Sir I do believe that it's relevant for the fact that this

is a statement from my chiropractor which I would like to enter in as evidence. The Prosecutor has seen this. Not during trial but prior to trial. Would you like to take a look at it Mr. Thomas?

THOMAS: I have seen it your Honor. I'd object to its admission.

COURT: And, and, and I'm going to sustain the objection sir, because it's not relevant to this, to the charges here.

EYTCHESON: When my hands go numb; when I have the slightest pressure on my chest I don't think that someone behind the wheel with numb hands is a good idea particularly.

COURT: Well sir maybe what you're saying [is] that you shouldn't be driving if you have this condition. I don't know.

{¶ 42} As this Court has previously noted, "[t]rial courts have discretion over the admission or exclusion of evidence, and we review the court's decision for abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus." *State v. Dyer*, 2017-Ohio-8758, __ N.E.3d __, ¶ 24 (2d Dist.).

{¶ 43} R.C. 4513.263 provides in part: "(B) No person shall do any of the following:

(1) Operate an automobile on any street or highway unless that person is wearing all of the available elements of a properly adjusted occupant restraining device * * *."

{¶ 44} R.C. 4513.263(C) provides in part:

Division[ ] (B)(1) of this section [does] not apply to a person who has an affidavit signed by a physician licensed to practice in this state under Chapter 4731. of the Revised Code or a chiropractor licensed to practice in

this state under Chapter 4734. of the Revised Code that states that the person has a physical impairment that makes use of an occupant restraining device impossible or impractical.

{¶ 45} Evid. R. 103(A)(2) provides:

**(A) Effect of Erroneous Ruling**.   Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

* * *

(2) *Offer of Proof*.   In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. * * *

{¶ 46} " 'The purpose of a proffer is to assist the reviewing court in determining, pursuant to Evid.R. 103, whether the trial court's exclusion of evidence affected a substantial right of the appellant.' *In re Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, 833 N.E.2d 362, at ¶ 37." *State v. Mullins*, 2d Dist. Montgomery No. 21277, 2007-Ohio-1051, ¶ 36.

{¶ 47} We see no abuse of discretion in the trial court's decision to exclude Eytcheson's "statement" or "document."   Eytcheson did not proffer, or ask to proffer, the "statement" or "document," and R.C. 4513.263(C) requires Eytcheson to have an *affidavit*, which is "a written declaration under oath." R.C. 2319.02.   Hearsay, which pursuant to Evid.R. 801(C) is "a statement, other than one made by the declarant while testifying at the trial * * * offered in evident to prove the truth of the matter asserted," is not admissible, pursuant to Evid.R. 802, absent a specific exception, and Eytcheson did not establish nor

proffer that he had a sworn affidavit from his chiropractor. Additionally, Eytcheson's injury occurred in 2012, and the date of the "statement" or "document" is unknown. For the foregoing reasons, Eytcheson's eighth assignment of error is overruled.

{¶ 48} Eytcheson's ninth assignment of error is as follows:

THE TRIAL COURT ERRED IN ITS DECISION WITHOUT REQUIRING THE PROSECUTOR BEING REQUIRED TO PROVE BEYOND A REASONABLE DOUBT THAT I WILLFULLY AND KNOWINGLY PERFORMED AN [UNLAWFUL] ACT.

{¶ 49} Eytcheson asserts that the prosecutor "presented no argument nor evidence whatsoever which would show my 'willfulness' nor my evil or malicious intent."

{¶ 50} R.C. 2901.22 sets forth the culpable mental states for criminal offenses, namely purposely, knowingly, recklessly, and negligently. Willfully is not a culpable mental state.

{¶ 51} As this Court noted in *State v. Finn*, 2d Dist. Montgomery No. 22914, 2009-Ohio-4949, ¶ 23-29:

* * * R.C. 2901.21 states in relevant part:

(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:

(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;

(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.

(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

In *State v. Shaffer* (1996), 114 Ohio App.3d 97, 102-103, 682 N.E.2d 20140, the Court of Appeals stated:

Generally, strict liability attaches to offenses which are regulatory in nature and which are designed to protect the health, safety, and well-being of the community. *State v. Buehler Food Markets, Inc.* (1989), 50 Ohio App. 3d 29, 30, 552 N.E.2d 680, 681-682. Furthermore, when a statute reads 'no person shall' engage in proscribed conduct, absent any reference to a culpable mental state, the statute indicates a legislative intent to impose strict liability.

**{¶ 52}** R.C. 44510.21(A) provides: "*No person* whose driver's license * * * has

been suspended *shall* operate any motor vehicle upon a public road or highway * * *." R.C. 4513.263(B) provides that "*No person shall* do any of the following: (1) Operate an automobile on any street or highway unless that person is wearing all of the available elements of a properly adjusted occupant restraining device * * *." (Emphasis added.)

{¶ 53} We conclude that the traffic laws at issue herein are regulatory in nature and for the well-being of the community, and that strict liability attaches thereto. The State was accordingly not required to prove that Eytcheson acted willfully or knowingly, and his ninth assignment of error is overruled.

{¶ 54} Eytcheson's tenth assignment of error is as follows:

THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO FUNCTION EVEN FOLLOWING THE PROSECUTOR ADMITTING HE DIDN'T UNDERSTAND THE DISTINCTION BETWEEN TRAVELING AND DRIVING.

{¶ 55} Eytcheson asserts that "[d]uring his cross-examination of me, the Prosecutor opened the door for the difference between traveling and driving." He asserts that "[d]ue to the no less than 10 times I was instructed by Mr. Dressel to address items pertaining to the law in my closing, I believed at that moment I was to address his question during my closing arguments. Therefore, I was not allowed to present the well settled Supreme Court decisions which clearly establish said differentiation." Eytcheson argues that since "Mr. Dressel stopped me from doing so by limiting the time in which I had to address each item in my closing arguments * * * I was not allowed to present this information which was crucial to my defense against the charges."

{¶ 56} Eytcheson directs our attention again to his closing argument set forth

above and the following exchange in his cross-examination by the prosecutor:

> Q. And I don't think I understand the distinction, the distinction between traveling and driving. Could you explain it to us?
>
> A. Yes I could.
>
> Q. Go ahead.
>
> A. I don't believe I'm required to at this point. The [sic] Mr. Dressel has said that I should those [sic] things in my closing arguments.

**{¶ 57}** We conclude that this assignment of error is repetitive of Eytcheson's seventh assignment of error regarding his closing argument, and it accordingly fails and is overruled. Further, as noted above in our analysis of Eytcheson's fourth assignment of error, the operation of a motor vehicle is a privilege subject to reasonable regulation, and any purported distinction between traveling and driving is no defense to Eytcheson's offenses.

**{¶ 58}** Eytcheson's eleventh assignment of error is as follows:

> THE TRIAL COURT ERRED IN NOT REQUIRING THE PROSECUTION TO BRING AN INJURED PARTY AS A RESULT OF MY ACTIONS.

**{¶ 59}** Eytcheson asserts that "[n]o injured party made a complaint, nor testified. This is due to the fact that there was no injured party. Since no injured party, no crime existed for which I could be found guilty or innocent." He argues that since "no Corpus Del[i]cti was identified during entire Trial, there is no crime and all charges are invalid and moot as is the trial." He asserts that "in every prosecution for crime it is necessary to establish the 'corpus del[i]cti.' " According to Eytcheson, Office Colon did not "ever

express nor represent that she had suffered harm, injury, nor death as a result of my actions on 24 May 2017."

{¶ 60} This court previously addressed the corpus delicti rule in *State v. Gabriel,* 170 Ohio App.3d 393, 2007–Ohio–794, 867 N.E.2d 474, ¶ 56–57 (2d Dist.), *reversed on other grounds, In re Criminal Sentencing Cases,* 116 Ohio St.3d 31, 2007–Ohio–5551, 876 N.E.2d 528, wherein we stated:

The corpus delicti of an offense consists of the act and the criminal agency of the act. Before a confession of a crime may be admitted at trial, the state must introduce evidence independent of the confession to establish the corpus delicti of the offense. The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone." Accordingly, "this rule does not require evidence, other than the confession, showing that the accused committed the crime but, rather, requires some evidence that a crime was, in fact, committed."

"The evidence presented need not be so strong that it is capable of persuading a factfinder on some element of the crime beyond a reasonable doubt." Nor must the evidence be "even enough to make it a prima facie case." Rather, "[i]t is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." The corpus delicti rule does not require evidence related to all elements of the crime. Furthermore, the evidence need not be direct but, rather, may be circumstantial. Although the rule remains applicable, the Supreme Court

has indicated that it need not be applied "with a dogmatic vengeance." (Citations omitted.)

**{¶ 61}** The corpus delicti rule was not violated in the prosecution of Eytcheson's traffic offenses. The elements of the traffic offenses were established through the direct testimony of Officer Colon. No issue regarding a "confession" arose before the elements of the traffic violation were attested to by the officer. Eytcheson's eleventh assignment of error is overruled.

**{¶ 62}** We will consider Eytcheson's twelfth, thirteenth and fourteenth assignments of error together.

THE TRIAL COURT ERRED IN FAILING TO ENSURE THE SEVEN (7) ELEMENTS OF JURISDICTION.

And,

THE TRIAL COURT ERRED IN PROCESSING DOCUMENTATION TO THE STATE OF OHIO DEPARTMENT OF MOTOR VEHICLES TO CAUSE FURTHER ECONOMIC AND MONETARY DAMAGE TO ME WITHOUT JURISDICTION IN THIS CASE.

And,

THE TRIAL COURT ERRED IN ALLOWING AN INVALID AND/OR NON BONA FIDE CHARGING INSTRUMENT TO BE UTILIZED TO INITIATE PROCEEDINGS AGAINST ME.

**{¶ 63}** In his twelfth assignment of error, Eytcheson asserts that he is "misnamed in the action in this instant case and this element of jurisdiction is not satisfied."

**{¶ 64}** In his thirteenth assignment of error, Eytcheson asserts as follows:

While normally the Trial Court sends notice to the STATE OF OHIO Department of Motor Vehicles for processing of suspensions, financial responsibilities, etc., this is predicated on the fact that the Trial Court has jurisdiction over the events, in this case of 24 May 2017. By the justification in the above AoE, it is obvious that **they did not have jurisdiction to hear the case against me due to lack of jurisdictional elements not accomplished.** Further, since the charging document does not rightfully nor lawfully belong to me or has it been attributed to me but to a legal fiction, KELLY W EYTCHESON, **there is no bona fide lawful charging instrument against me.** Therefore, the damages to me economically and monetarily need to be reimbursed to me and the decision of the Trial Court vacated, reversed, overturned with prejudice.

{¶ 65} Finally, Eytcheson argues as follows:

Officer Shiloh Colon admitted that she decided to issue a citation. She did not say she was issuing a complaint as an injured party nor did she indicate in her testimony that she was serving a summons to appear. Nor did she indicate that the complaint portion of K00059898 was being issued in the name of a legal fiction, Kelly W Eytcheson. The proof for this is the citation in the Record. Please see it.

{¶ 66} As noted above, Colon testified that she observed Eytcheson commit an improper turn, that she initiated the traffic stop, and she identified him in court as the person who committed the cited offenses. The citation she issued is the Ohio Uniform Traffic Ticket. *See* Traf.R. 3(A).

**{¶ 67}** As this Court noted in *Matthews*, 2d Dist. Greene No. 2015-CA-73, 2016-Ohio-5055:

> Ohio municipal courts "are created by statute, R.C. 1901.01, and their subject-matter jurisdiction is also set by statute." *State v. Mbodji*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 11. An Ohio municipal court "has jurisdiction over misdemeanors occurring within its territorial jurisdiction." *Id.*, citing R.C. 1901.20(A)(1). The filing of a complaint invokes the jurisdiction of a municipal court. *Id.* at ¶ 12. *See also State v. Gunnell*, 10th Dist. Franklin No. 13AP-90, 2013-Ohio-3928, ¶ 8. An Ohio Uniform Traffic Ticket serves as the complaint and summons. *See* Traf.R. 3(A).

*Id.* at ¶ 4.

**{¶ 68}** Thus, the Kettering Municipal Court had subject matter jurisdiction. Further, Officer Colon served Eytcheson with the complaint and summons, which gave it personal jurisdiction over him.

> *See, e.g., Maryhew v. Yova,* 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984)(recognizing that personal jurisdiction may be acquired by service of process on a defendant); *State v. Gunnell,* 10th Dist. Franklin No. 13AP–90, 2013–Ohio–3928, ¶ 10 (observing that service of a complaint and summons in the form of a traffic ticket gives a municipal court personal jurisdiction); *Cleveland v. Kutash,* 8th Dist. Cuyahoga No. 99509, 2013–Ohio–5124, ¶ 11 ("Personal jurisdiction goes to the court's authority to render judgment against a party to an action. In contrast to

subject-matter jurisdiction, which is conferred by statute, the court * * * acquires personal jurisdiction over the defendant when * * * service of process is completed over the defendant [.]"); *State v. Zipfel,* 6th Dist. Wood No. WD–89–45, 1990 WL 71574 (June 1, 1990) ("Appellant was charged with violations of both state and municipal laws and properly served with notice of these offenses by the issuance of traffic citations (summons). * * * Therefore, the municipal court had personal jurisdiction over the person of the appellant.").

*State v. Eberhart*, 2d Dist. Montgomery Nos. 26045, 26046, 2014-Ohio-3259, ¶ 6.

{¶ 69} For the foregoing reasons, Eytcheson's twelfth, thirteenth and fourteenth assignments of error are overruled.

{¶ 70} Eytcheson's fifteenth assignment of error is as follows:

THE TRIAL COURT ERRED WHEN MR. DRESSEL ACTED ON BEHALF OF THE PROSECUTOR AND PERFORMED WHAT WAS THE RESPONSIBILITY OF THE PROSECUTOR.

{¶ 71} Eytcheson asserts as follows:

Mr. Dressel on P6, L11-14 stated that it appeared to him that I was challenging the jurisdiction of the Court. If I was, it is the job of the Prosecutor/asserter to prove jurisdiction. * * * Instead, Mr. Dressel did this against the requirements of the 7 elements of jurisdiction. Mr. Dressel further did this according to the Transcript P16, L4-19 when questioning the witness which is the job of the Prosecutor who is the trier of the case. Mr. Dressel purported to be the trier of the facts. Not cool. For these

instances, this case should be overturned, vacated, and reversed with prejudice.

{¶ 72} Eytcheson directs our attention to the following, which occurred after Officer Colon testified that Eytcheson failed to reinstate his driver's license, and Eytcheson objected:

COURT: I'll note your objection but it's overruled.

Q. After you saw what the status of the Defendant's license was what did you decide to do?

A. I decided to issue a citation.

Q. And that citation was for what?

A. It was for the seatbelt violation and for the failure to reinstate suspension. I gave him a verbal warning for the improper turn.

Q. And when you told the Defendant these things and that you were gonna be giving him a citation for those offenses did he make any statements to you?

A. I'm sure he did I just can't recall.

Q. Okay. Did he acknowledge that his license was suspended or anything along those lines?

A. I believe he did.

{¶ 73} Eytcheson asserts that the trial court assumed the role of the prosecutor by asking questions of Colon. It is not established, however, that the above questions were posed by the trial court. From our reading of the transcript, it is apparent these questions were asked by the prosecuting attorney, Mr. Thomas.

**{¶ 74}** Even if the questions of which Eytcheson complains were posed by the trial court, "Evid. R. 614(B) expressly authorizes the trial court – the factfinder in a bench trial – to 'interrogate witnesses, in an impartial manner, whether called by itself or by a party.' Consequently, the ability of a factfinder to question witnesses is not inconsistent with the duty of impartiality." *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 26.

**{¶ 75}** Having reviewed the entire transcript, we conclude that the trial court assumed the role of a neutral arbiter. Eytcheson's fifteenth assignment of error is overruled, and the judgment of the municipal court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies mailed to:

Nolan Thomas
2325 Wilmington Pike.
Kettering, Ohio 45420

Kelly W. Eytcheson
P.O. Box 751893
Dayton, Ohio 45475

Hon. Frederick W. Dressel
Kettering Municipal Court
2325 Wilmington Pike
Kettering, Ohio   45420