[Cite as *State v. Benson*, 2021-Ohio-2010.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TIA NICOLE ASHLEY BENSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 BE 0040

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 18 CR 271

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Dan Fry*, Belmont County Prosecutor, 147-A West Main Street, St. Clairsville, Ohio 43950 and *Atty. J. Flanagan*, Assistant Prosecuting Attorney for Plaintiff-Appellee and

*Atty. Alexander Keane*, P.O. Box 92, Canfield, Ohio 44406, for Defendant-Appellant.

Dated: June 14, 2021

_____

**D'Apolito, J.**

{¶1}  Appellant Tia Nicole Ashley Benson appeals her sentences for two counts of complicity to commit abduction, in violation of R.C. 2923.03(A)(2)(F) (aid and abet) and 2905.02(A)(2)(by force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear), felonies of the third degree, and one count of complicity to commit theft in violation of R.C. 2923.03(A)(2)(F) and 2913.02(A)(1) (beyond the scope of consent of the owner), a felony of the fourth degree, following her entry of a guilty plea in the Belmont County Court of Common Pleas. The trial court imposed consecutive, maximum sentences.  In her sole assignment of error, Appellant argues that the trial court's imposition of consecutive sentences is not supported by the record.

{¶2}  Appellant was originally charged with one count of complicity to commit kidnapping in violation of R.C. 2923.03(A)(2)(F) and 2905.01(A)(2), and one count of complicity to commit aggravated robbery in violation of R.C. 2923.03(A)(2)(F) and 2911.01(A)(2), felonies of the first-degree, in addition to the fourth-degree theft charge. In exchange for her plea, the state agreed to amend the first two counts in the indictment from first-degree kidnapping and aggravated robbery to third-degree abduction. Appellant committed the crimes with Jordan Javaughn Baker.

{¶3}  Appellant underwent two competency evaluations during the pretrial proceedings.  She was found to be capable of understanding the nature and objective of the proceedings against her and of assisting in her own defense, however, Appellant demonstrated borderline intellectual functioning.

{¶4}  Relevant to above-captioned appeal, the presentence investigation report ("PSI") states that Appellant (d.o.b. 9/30/1989) is a low risk for recidivism.  According to the PSI, Appellant's criminal history includes, in its entirety, a conviction in 2017 for operating a motor vehicle without a license; a charge of criminal mischief (a misdemeanor of the third degree) in 2016, which was dismissed after she successfully completed a diversion program; and charges for simple assault, harassment, and disorderly conduct

in 2009, for which the disposition was unknown. Appellant was also convicted of shoplifting when she was twelve years of age.

**{¶5}** At the sentencing hearing, the state offered no argument beyond the statements and conclusions made in the PSI and victim impact report. (8/12/19 Sent. Hrg., p. 2.) Prior to sentencing, Appellant's trial counsel stated that "[Appellant] realizes that the two victims in this case were simply young girls trying to help [Appellant and Baker], and that situation was taken advantage of." (*Id.*, p. 3.)

**{¶6}** Prior to imposing sentence, the trial court read the following excerpt from the police report: "The victims in this matter were juveniles, ages 17 and 14. They were kidnapped and forced into the trunk of their car at gunpoint. The male grabbed her neck and put the gun to her head. The male and female took her and the phones, forced into the trunk [sic]." (*Id.*, p. 4.) The trial court observed, "This is an extraordinarily serious and extraordinarily scary matter. We are lucky we do not have murder charges that we're dealing with here, to be honest with you." (*Id.*) As a consequence, the trial court imposed maximum sentences on all three of the convictions, that is, 36 months for each of the third-degree felonies, and 18 months for the fourth-degree felony.

**{¶7}** Further, the trial court imposed the maximum sentences to run consecutively, for an aggregate sentence of seven-and-a-half years, stating:

> This Court determines that consecutive service [sic] is necessary to protect the public from future crime and to punish the offender. Also, consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.
>
> This Court determines that this conduct and the danger was extremely serious for the public. This Court determines in following the law that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(*Id.*, p. 5.)

**{¶8}** In the judgment entry, the trial court, in considering the factors listed in R.C. 2929.12(B) and (D), cited Appellant's juvenile and adult criminal history, and her failure to respond to previously-imposed sanctions, in order to conclude that she has demonstrated a pattern of criminal activity without a good faith attempt at a change of lifestyle. With respect to the imposition of consecutive sentences, the judgment entry reads, in relevant part:

> In accord with R.C. § 2929.14(C)(4), the Court finds that a consecutive sentence is necessary to protect the public from future crime and to punish the offender, and consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger this offender poses to the public. *The Court finds that imposition of consecutive sentences is reasonable and appropriate. The Court further finds that consecutive sentences are necessary to protect the public from future crimes. The Court further finds that the harm to the victim was so great that a single term does not adequately reflect the seriousness of Defendant's conduct and that consecutive sentences are necessary to protect the public from future crimes by this offender and by others.*

(Emphasis in original) (8/13/19 J.E., p. 2.) This timely appeal followed.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT FOUND THAT CONSECUTIVE SENTENCES WOULD NOT BE DISPROPORTIONATE TO THE DANGER PRESENTED BY APPELLANT THOUGH [SIC] THAT FINDING IS UNSUPPORTED BY THE RECORD.**

**{¶9}** In her sole assignment of error, Appellant concedes that the record contains sufficient evidence that the harm to the victims in this case is so great as to render a single term of imprisonment insufficient. However, based on the assessment in the PSI that she has a low risk of recidivism, she argues that there is not clear and convincing evidence in the record to support the trial court's finding that consecutive sentences are

Case No. 19 BE 0040

required to protect the public from future harm, and that consecutive sentences totaling seven-an-a-half years are not disproportionate to the danger she poses to the public. The state counters that the trial court fulfilled its obligation with respect to the imposition of consecutive sentences.

{¶10} Pursuant to the Ohio Supreme Court's holding in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence based on a finding "[t]hat the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant."

{¶11} In *State v. Jones,* -- Ohio St.3d --, 2020-Ohio-6729, -- N.E.3d --, the Ohio Supreme Court recently held that R.C. 2953.08(G)(2)(a) does not authorize an appellate court to modify or vacate a sentence based on the lack of support in the record for the trial court's findings unless the findings are made pursuant to the statutory provisions specifically listed in R.C. 2953.08(G)(2)(a). *Id.* at ¶ 28. In her sole assignment of error, Appellant asserts that the imposition of consecutive sentences, governed by R.C. 2929.14(C)(4) which is among the statutory provisions specifically listed in in R.C. 2953.08(G)(2)(a), is unsupported by the record.

{¶12} The standard of review applied to findings required under particular statutory provisions, including consecutive sentencing, is clear and convincing. Clear and convincing evidence "is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph one of the syllabus.

{¶13} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16,

¶ 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). When imposing consecutive sentences, a trial court must make the statutory findings required by R.C. 2929.14(C)(4), which provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶14} The trial court need not provide reasons in support of its consecutive sentence findings and need not quote the statute verbatim in making these findings. *Bonnell*, *supra*, ¶ 27, 29. However, the trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 7th Dist. Mahoning No. 13-MA-125, 2015-Ohio-4100, ¶ 33-34, citing *Bonnell* at ¶ 37.

{¶15} The following facts are taken from what appears to be an excerpt from a police report included in the PSI. On November 4, 2018, Appellant and Baker were hitchhiking, when the victims, 17-year-old K.E., who was driving a 2007 Chevy Cobalt, and fourteen-year-old B.D., who was in the passenger seat, stopped and offered transportation to Appellant and Baker as far as Martins Ferry. During the conversation that ensued in the automobile on the way to Martins Ferry, Appellant informed the victims that she was pregnant.

{¶16} After they arrived at the McDonald's in Martins Ferry and everyone exited the vehicle, Baker approached the victims and asked them to take him and Appellant to his uncle's house. The victims agreed, and when the automobile entered "a dark area," Baker grabbed K.E.'s neck and pointed a gun to her head. Appellant and Baker took the victims' mobile telephones and then the victims were forced into the trunk.

{¶17} With the victims in the trunk, Appellant and Baker drove the automobile to the 500 block of Columbus Avenue. The victims waited until Appellant and Baker exited the vehicle, then the victims accessed a release mechanism inside the trunk and escaped.

{¶18} Using the "Find My I-phone" application, investigating officers located B.D.'s telephone in a wooded area near some railroad tracks. Officers began patrolling the railroad tracks and came upon Appellant and Baker. When Baker saw the officers, he discarded an object and fled into the woods.

{¶19} Baker was apprehended and both Appellant and Baker were arrested. A loaded handgun, with a round in the chamber, was found on the ground near the woods. A pink auxiliary cord and a vape box belonging to K.E. were found in Appellant's possession. The following day, the victims searched the area where the arrest occurred and found K.E.'s telephone as well as several other items including a Coach purse and debit and insurance cards taken from them the previous evening.

{¶20} Appellant told the arresting officers that Baker decided that he wanted to steal K.E.'s automobile when he was in the McDonald's parking lot. Appellant further stated that she left the scene after Baker forced the victims into the trunk, contrary to the police report, which read that the victims waited until both Appellant and Baker departed

from the vehicle to escape.  Appellant conceded that she was not pregnant, but denied personally misrepresenting her condition to the victims.

**{¶21}** In a written statement that Appellant completed after she entered her plea, she writes that Baker told the victims that she was pregnant.  Appellant further writes that Baker kidnapped, bound, and raped her earlier that day, and she participated in the crime under duress because Baker threatened to kill her mother and her children.  According to Appellant's written statement, she forced the victims into the truck, but she tearfully pleaded with Baker not to abduct them.   She further writes that she was able to escape from the automobile after forcing the victims into the trunk, but Baker captured her and forced her return to the vehicle.

**{¶22}** During the investigations of the crimes, officers learned that Appellant and Baker approached a woman who was sitting on her porch and asked her for a ride in her automobile on the same evening that the crimes at issue in this appeal occurred.  When the woman informed them that she did not own an automobile, they asked to use her telephone and then departed.

**{¶23}** According to the risk assessment in the PSI, Appellant's education, employment and financial situation indicate that she is a high risk for recidivism.  The PSI establishes that Appellant, who dropped out of high school and has four children, has had only one job in her lifetime. She was employed as a cook in a pizza shop from August of 2018 to November of 2018.  Her employment at the pizza shop immediately preceded the crime at issue in this appeal.  Presumably she lost the job as a result of her arrest.  The risk assessment further reads that all other factors, including her criminal history, family and social support, neighborhood, peer associations, and criminal attitudes and behavior patterns indicate that she is a low risk for recidivism.

**{¶24}** Last year, we considered the impact of a determination in a PSI that the offender was unlikely to commit future crimes on the imposition of consecutive sentences in *State v. Lee*, 7th Dist. Belmont No. 19 BE 0018, 2020-Ohio-3580,  Lee was charged in a 28-count indictment, which alleged that she used her position as York Township's fiscal officer to steal money from the township and the water authority for personal purchases, to tamper with the township's financial record, and that she failed to remit taxes from the township and the water authority.

**{¶25}** Lee agreed to plead guilty to two counts of theft in office, one count of tampering with records, and two counts of failure to remit. She also agreed to pay restitution totaling approximately $123,000.00 to the township and the water authority and to never again hold public office in Ohio. In exchange, the state agreed to dismiss all of the remaining charges.

**{¶26}** The trial court sentenced Lee to 36 months on each of the theft in office convictions, 36 months for the tampering with evidence conviction, and twelve months on each of the failure to remit convictions, to be served consecutively, with the exception of one of the failure to remit sentences, for an aggregate sentence of ten years, plus a $10,000.00 fine.

**{¶27}** Beginning with the factor that consecutive sentences are necessary to protect the public from future crime or to punish the offender, Lee argued that her lack of criminal history and her presentence investigation, which labeled her as a low recidivism risk, did not support the imposition of consecutive sentences.

**{¶28}** Lee cited two cases from the Second District Court of Appeals. In *State v. Hicks*, 2nd Dist. Greene No. 2015-CA-20, 2016-Ohio-1420, Hicks pled guilty to five counts of theft from a disabled adult. As part of a plea agreement, the state agreed to recommend community control. However, the trial court sentenced Hicks to prison on all five counts and ordered the sentences to run consecutively for a total of 108 months.

**{¶29}** On appeal, Hicks argued that the imposition of consecutive sentences was not supported by the record. The Second District held that the record did not clearly and convincingly support the imposition of consecutive sentences because Hicks was 52 years old at the time of the offenses, she had no criminal history, she committed the crimes in order to pay for her dying husband's medications and subsequent funeral, and the presentence report indicated that she was unlikely to commit any future crimes. *Id.* at ¶ 21-22.

**{¶30}** Lee also cited *State v. Adams*, 2nd Dist. Clark No. 2014-CA-13, 2015-Ohio-1160. Adams was charged with eight counts of burglary, two counts of drug possession, and one count of receiving stolen property. The offenses occurred in a five-month period. Pursuant to a plea agreement, Adams pled guilty to three counts of burglary and one

count of possession of heroin. The trial court ordered the sentences on each count to run consecutively for an aggregate sentence of twenty years.

**{¶31}** On appeal, the Second District held that the record did not support the conclusion that consecutive sentences were necessary to protect the public or punish Adams, and were not disproportionate to the seriousness of Adams's conduct and to the danger he poses to the public. The Second District predicated its holding on Adams' lack of adult felony record, the non-violent nature of the crimes, and the fact that Adams suffered from an untreated heroin addiction.

**{¶32}** Lee argued that Hicks and Adams were analogous to her case because she had no prior criminal history, her risk assessment in her presentence report was low, and her crimes were non-violent. We reached the opposite conclusion, however, writing:

> Next, [Lee] argues that the same reasons (her lack of criminal history, lack of violence, and low risk for recidivism) show that the second statutory factor (consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger she poses to the public) is not supported by the record.
>
> [Lee]'s sentence is not disproportionate to the seriousness of her conduct. Appellant pled guilty to five offenses stemming from her theft of approximately $123,000 from York Township and York Water Authority over a three-year period and using the money for numerous personal purchases. As a result of appellant's actions, York Township's and York Water Authority's financial records were in such disarray that the Ohio Auditor's office declared them un-auditable. [Lee] also failed to timely remit the township's taxes which resulted in additional fees the township had to pay. As previously stated, when the water authority experienced a major line break, it could not secure a loan to repair the break due to the water authority's financial deficit and the water authority had to increase rates for its customers. Moreover, [Lee] used her position as York Township's fiscal officer in order to commit these crimes.

[Lee]'s sentence is also not disproportionate to the danger she poses to the public. Appellant pled guilty to offenses where she was charged with stealing approximately $123,000 over a three-year period. The fact that [Lee] pled guilty to stealing such a large amount of money and committed these offenses over an extended period of time indicates that she poses a danger to the community because she has demonstrated a propensity to steal from others within her community.

*Id.* at ¶ 56-58.

{¶33} In this appeal, Appellant argues that consecutive sentences are not required to protect the public from future harm, and, similarly, that consecutive sentences totaling seven-and-a-half years are disproportionate to the danger she poses to the public based on the conclusions in the PSI. We disagree. The PSI is one of several factors that the trial court considered in fashioning Appellant's sentence. Further, although the PSI concludes that Appellant has a low risk for recidivism, the investigator conceded that one factor – Appellant's lack of education and employment history -- indicates a high risk of recidivism. Appellant's only employment immediately preceded the crimes at issue here, and it appears that she lost that one and only job due to her arrest.

{¶34} Further, Appellant has a criminal history, albeit with no felonies, unlike Lee, who had no criminal history at all. The trial court acknowledges in the judgment entry that Appellant has continued to commit crimes despite her prior convictions, and despite efforts, such as the diversion program, to rehabilitate instead of incarcerate her.

{¶35} Of greatest import, the facts in this case are distinguishable from all of the above-cited cases because Appellant's convictions were for violent crimes committed against a seventeen-year-old-girl and a fourteen-year-old-girl. Baker did not only brandish a gun, but held it to K.B.'s head. The girls were robbed and forced into the trunk of the automobile. Further, Appellant and Baker did not free the girls; the girls escaped as a result of their own courage and intelligence. According to a victim impact report, at least one of the victims has suffered long-term effects as a result of Appellant's crime. As the trial court observed, the criminal acts of Appellant and Baker could have resulted in physical harm or death to both girls.

Case No. 19 BE 0040

{¶36} Finally, Appellant asserted before the trial court that she committed the crimes under duress, but the trial court apparently did not credit her testimony. Although Appellant has borderline intellectual functioning, she did not assert that Baker manipulated or tricked her into committing the criminal acts.

{¶37} In conclusion, we find that there is clear and convincing evidence in the record to support the imposition of consecutive sentences and Appellant's sole assignment of error has no merit. Accordingly, the judgment entry imposing consecutive sentences is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**